UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANTHONY RENTH,

    Plaintiff,

v.

ROBERT HERTZ and MICHAEL ELLIOTT,

    Defendants.

Case No. 11-cv-834-JPG-SCW

# MEMORANDUM AND ORDER

This matter comes before the Court on the motion to dismiss filed by defendant Robert Hertz pursuant to Federal Rule of Civil Procedure 12(b)(6), which the Court has construed as a motion for summary judgment (Doc. 10). Plaintiff Anthony Renth has responded to the motion (Doc. 14).

## I. Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396. Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest

upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252; *accord Michas*, 209 F.3d at 692.

## II. Facts

Viewed in Renth's favor, the evidence establishes the following relevant facts.

Renth was detained from October to December 2009 in the Madison County Jail first as a pretrial detainee, then after a guilty plea on October 6, 2009, as a convicted felon.[1] Hertz was the Madison County Sheriff and was in charge of the jail.

At some point, Renth and defendant Michael Elliot were both housed on cellblock D-South of the jail. Elliot had been convicted in the past of robbery and was being detained on first degree murder charges in which it was alleged that he tortured and killed a disabled pregnant woman. He had also been involved in an altercation with another jail inmate, Bradley Vowels, on September 9, 2009. In contrast, Renth was a middle-aged non-violent career drug offender.

---

[1] There is some disagreement over whether Renth was a convicted inmate or a pretrial detainee. At the relevant time, he had been convicted in an Illinois court but had been allowed a short furlough before beginning to serve his sentence. He was not released on furlough, however, because jail personnel believed there was a parole hold on him by the state of Missouri. He continued to be detained based on that belief until Missouri authorities indicated there was no hold. Nevertheless, Renth was not transferred to the Illinois Department of Corrections but was kept

2

Renth and Elliot were housed on the same cellblock pursuant to a jail policy that provided cellblock D-South would house only felony detainees. The policy delegates cell assignments to the jail deputy. It allows the deputy to consider the reason for detention, the inmate's sex, health, age, type of offense charged and prior record, and any need to separate from other inmates involved in the inmate's case when making cell and cellblock assignments. It also allows an inmate to be moved to another cell or cellblock.

Hertz has no day-to-day involvement with the housing assignments of inmates pursuant to the policy. He did not personally make the decision to house Renth or Elliot on cellblock D-South, was not aware of Renth's housing assignment, and did not know that Elliot posed a specific threat to Renth's safety. Renth did not complain to Hertz about any danger from Elliot or from being housed on cellblock D-South, and he did not ask to be given a different housing assignment. Although Hertz was aware that Elliot had gotten into an altercation with Vowels in the past, his investigation did not reveal who was at fault for the conflict. Hertz was not aware of any other altercation involving Elliot.

On December 26, 2009, Elliot assaulted and injured Renth. After the incident, Hertz first became aware that Renth and Elliot had been housed on the same cellblock and that Elliot posed a risk to Renth.

In December 2010, Renth filed a negligence lawsuit in state court. In August 2011, Renth amended his complaint to allege a cause of action under 42 U.S.C. § 1983 for violation of his Eighth Amendment right not to be subject to cruel and unusual punishment. He believes Hertz was deliberately indifferent to his safety needs by placing him on the same cellblock as Elliot and by failing to prevent Elliot's assault.

---

at the jail. However, as explained later, his status is irrelevant to the analysis in this case.

Hertz asks the Court to dismiss the claim against him because he was not aware of any danger Elliot posed to Renth, an essential element of a deliberate indifference claim. In response, Renth argues that Hertz was deliberately indifferent to his safety by placing him on the same cellblock as Elliot, which Hertz should have known posed a danger to Renth. Renth also believes Hertz should be liable under § 1983 for failing to abide by Illinois state law regarding jail confinement.

## III. Analysis

The Eighth Amendment[2] prohibits the infliction of cruel and unusual punishment. The test for an Eighth Amendment violation due to conditions of confinement has two components, an objective and a subjective one. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, the condition of confinement about which the inmate complains must be objectively serious; it must result in the denial of "'the minimal civilized measure of life's necessities'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Second, the official must have a sufficiently culpable state of mind, that is, he must at a minimum be deliberately indifferent. *Farmer*, 511 U.S. at 834.

Under the Eighth Amendment, prison officials are required to take reasonable measures to protect inmates from violence from other prisoners. *Farmer*, 511 U.S. at 825, 833-34; *Mayoral v. Sheahan*, 245 F.3d 934, 938 (7th Cir. 2001). A prison official can be liable for failure to protect an inmate if he intends or was deliberately indifferent to a substantial risk of serious harm to the inmate. *Farmer*, 511 U.S. at 828; *Mayoral*, 245 F.3d at 938. To meet the

---

[2] Whether Renth was a pretrial detainee or a convicted inmate is irrelevant to the critical issues in this case because there is no functional difference in the constitutional standards applicable to convicted inmates under the Eighth Amendment and those applicable to pretrial detainees under the Fourteenth Amendment. *Mayoral v. Sheahan*, 245 F.3d 934, 938 (7th Cir. 2001). The Court will articulate its analysis in Eight Amendment terms since Renth had

4

"deliberate indifference" standard in this context, a prison official must know of an excessive risk to an inmate's health or safety and disregard it by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 847; *Mayoral*, 245 F.3d at 938. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. It is possible to show that an official actually knew of the risk because of circumstantial evidence or because the risk was obvious, longstanding, pervasive or well-documented. *Farmer*, 511 U.S. at 842; *Mayoral*, 245 F.3d at 938-39. Thus, the plaintiff must show both an objectively serious risk of danger and that the defendant actually knew of that risk. *Mayoral*, 245 F.3d at 938.

Renth has sued Hertz in his official capacity as the sheriff of Madison County and as the policymaker for the jail. A municipality such as a sheriff's office can be liable under § 1983 if (1) it had an express policy calling for constitutional violations, (2) it had a widespread practice of constitutional violations that was so permanent and well settled as to constitute a custom or usage with the force of law or (3) if a person with final policymaking authority for the county caused the constitutional violation. *Monell v. Department of Social Servs.*, 436 U.S. 658, 694 (1978); *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000).

To the extent Renth sues Hertz in his official capacity as sheriff based on the jail housing assignment policy, he has not shown that policy calls for a constitutional violation. Nothing in the policy reveals that it is designed to deliberately disregard a substantial risk to inmate safety. It allows the jail deputy making cell and cellblock assignments to consider a host of factors that are relevant to inmate safety, including the type of offense charged and the inmate's prior record. It also allows for reassignments if the need arises. Additionally, there is no evidence of a

---

been convicted and sentenced at the time of the assault.

history of violence resulting from this policy such that its continued implementation can be considered deliberate indifference to inmate safety.

To the extent Renth sues Hertz for his actions as the final policymaking authority for the jail, Renth has not pointed to any evidence Hertz actually knew that Elliot or anyone else posed a substantial risk to Renth or to anyone else on the same cellblock. It is true that deliberate indifference does not require knowledge of a specific harm from a specific inmate; knowledge of a general risk to all inmates may be enough. *See Mayoral*, 245 F.3d at 939. It is also true that "[k]nowledge of a risk can be shown if an official was exposed to information from which the inference could be drawn that a substantial risk exists, and he or she also draws the inference." *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004). However, here Hertz did not know of a risk to Renth. He knew only that Elliot had been in a single altercation of an undetermined cause in the past. He did not know where Elliot or Renth were housed at the time of the assault on Renth, and there is no evidence he knew Elliot's past criminal history or his current charges. There is also no evidence Hertz knew of any general threat to inmate safety on cellblock South-D. There is simply no evidence from which a reasonable juror could find that Hertz actually knew of any danger posed to Renth by being assigned to cellblock D-South. If there is no evidence showing Hertz knew of a substantial threat to Renth's safety, he cannot be liable under § 1983 for deliberate indifference.

To the extent Renth alleges Hertz was deliberately indifferent by failing to provide sufficient staff to prevent assaults like Elliot's, there is no evidence from which a reasonable jury could conclude that Hertz was aware of any inadequate staffing that posed a substantial risk of serious assaults and then deliberately ignored that shortfall.

Finally, to the extent Renth alleges Hertz was deliberately indifferent to his safety by failing to transfer him from the jail to the Illinois Department of Corrections sooner, that theory fails as well. For the reasons explained above, there is no evidence Hertz knew of a substantial risk of danger to Renth by being housed at the jail and deliberately failed to transfer him knowing about that risk or intending that he be harmed.

Renth's argument that Hertz can be liable for something short of deliberate indifference has no merit. "Negligence on the part of an official does not violate the Constitution, and it is not enough that he or she should have known of a risk." *Pierson*, 391 F.3d at 902. Unless Hertz *actually* knew of a risk to Renth's safety, he cannot be liable under § 1983 regardless of whether he *should have known* of the risk. Furthermore, while the failure to comply with an Illinois statute regarding jail confinement might serve as the appropriate standard for a negligence case, it is not for a § 1983 case alleging an Eighth Amendment violation.

IV. **Conclusion**

For the foregoing reasons, the Court **GRANTS** Hertz' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which the Court has construed as a motion for summary judgment (Doc. 10) and **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

The Court notes that there is no evidence Renth has served Elliot with process in this case. The Court **ORDERS** Renth to **SHOW CAUSE** on or before May 21, 2012, why his claim in this case against Elliot should not be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m) for failure to timely effect service. Failure to respond in a timely manner to this order will result in dismissal of this action with prejudice for failure to prosecute

7

pursuant to Federal Rule of Civil Procedure 41(b).

**IT IS SO ORDERED.**
**DATED:   April 24, 2012**

                                            s/J. Phil Gilbert
                                            **J. PHIL GILBERT**
                                            **DISTRICT JUDGE**